JEFFER, MANGELS, BUTLER & MARMARO LLP
MARTIN H. ORLICK (Bar No. 083908), MHO@jmbm.com
MATTHEW S. KENEFICK (Bar No. 227298), MSK@jmbm.com
Two Embarcadero Center, Fifth Floor
San Francisco, California 94111-3824
Telephone:  (415) 398-8080
Facsimile:  (415) 398-5584

DENNIS J. HERRERA, ESQ., (SBN 139669)
DANNY CHOU, ESQ. (SBN 180240) danny.chou@sfgov.org
JAMES M. EMERY, ESQ. (SBN 153630) jim.emery@sfgov.org
ELAINE M. O'NEIL, ESQ. (SBN 142234) elaine.o'neil@sfgov.org
Fox Plaza, 1390 Market St., Sixth Floor
San Francisco, CA 94102
Telephone:  (415) 554-4261
Facsimile:  (415) 554-3985

Attorneys for Defendants and Third-Party Plaintiffs CITY AND COUNTY OF SAN FRANCISCO and CITY OF SAN FRANCISCO UPTOWN PARKING CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CRAIG YATES,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>UNION SQUARE; CITY AND COUNTY OF SAN FRANCISCO; CITY OF SAN FRANCISCO UPTOWN PARKING CORPORATION; EMPORIO RULLI IL CAFFE UNION SQ.; EMPORIO RULLI IL CAFFE UNION SQ., INC.; and DOES 1 through 50, Inclusive,<br><br>　　　　Defendants.<br><br>CITY AND COUNTY OF SAN FRANCISCO and CITY OF SAN FRANCISCO UPTOWN PARKING CORPORATION,<br><br>　　　　Third-Party Plaintiffs,<br><br>　　v. | CASE NO.   C074087 JSW<br><br>**THIRD-PARTY COMPLAINT OF CITY AND COUNTY OF SAN FRANCISCO AND CITY OF SAN FRANCISCO UPTOWN PARKING CORPORATION AGAINST SAN FRANCISCO PARKING, INC., D/B/A CITY PARK FOR BREACH OF WRITTEN CONTRACT AND AGAINST SF VALET PARKING FOR IMPLIED EQUITABLE INDEMNITY**<br><br>Complaint Filed:   August 9, 2007 |

PRINTED ON RECYCLED PAPER

SAN FRANCISCO PARKING, INC., d/b/a CITY PARK, a California corporation; and SAN FRANCISCO VALET PARKING, an entity of unknown form,

    Third-Party Defendants.

Defendants and Third-Party Plaintiffs City and County of San Francisco ("**CCSF**") and City of San Francisco Uptown Parking Corporation ("**Uptown**") (collectively, "**Third-Party Plaintiffs**") hereby complain against San Francisco Parking, Inc., doing business as City Park, a California corporation ("**City Park**") and San Francisco Valet, an entity of unknown form ("**SF Valet**"), as follows:

## GENERAL ALLEGATIONS

### JURISDICTION

1. This Court has supplemental jurisdiction over this Third-Party Complaint pursuant to 28 USC § 1367(a).

### VENUE

2. All actions complained of herein have taken place within the jurisdiction of the United States District Court, Northern District of California. Accordingly, venue is invoked pursuant to 28 U.S.C. § 1391(a).

### INTRADISTRICT ASSIGNMENT

3. A substantial part of the events or omissions giving rise to the claims set forth in this Third-Party Complaint occurred in the City and County of San Francisco.

### FACTUAL BACKGROUND

**The Parties**

4. **CCSF**. At all times relevant to this Action, CCSF was and is a municipal corporation and a chartered city under the Constitution of the State of California.

5. **Uptown**. At all times relevant to this Action, Uptown was and is a non-profit public benefit corporation with its principal place of business located in the City and County of San Francisco, California.

1  6. **Yates**. At all times relevant to this Action, Plaintiff Craig Yates ("**Yates**") was and
2  is an allegedly physically disabled individual requiring the use of a wheelchair for mobility.
3  7. **City Park**. At all times relevant to this Action, City Park was and is a California
4  corporation with its principal place of business located in the City and County of San Francisco,
5  California.
6  8. **SF Valet**. At all times relevant to this Action, SF Valet was and is an entity of
7  unknown form with its principal place of business located in the City and County of San Francisco,
8  California.

**The Parking Garage**

9. The real-property and improvements thereon at issue in this Action is the off-street parking garage commonly known as the Union Square Garage and located at 333 Post Street, San Francisco (the "**Garage**").

**The Parking Garage Management Agreement**

10. On or about March 1, 2001, Uptown on the one hand, and City Park on the other, entered into that certain written Management Agreement, which generally provides for City Park to operate and manage the Garage, as more specifically set forth therein (the "**Management Agreement**"). Attached hereto as **Exhibit 1** and incorporated herein by this reference, as if set forth in full, is a true and correct copy of the Management Agreement.

11. The Management Agreement, at Sections 4.1 and 4.2, provides for a term of March 1, 2001 through March 31, 2001, to be extended on a monthly basis until December 31, 2002 (the "**Initial Term**"), as set forth more specifically therein.

12. Uptown and City Park duly modified, in writing and by operation, the term of the Management Agreement to extend beyond the Initial Term on a month-to-month basis, and at all times relevant to this Action, the Management Agreement was in place and was in full force and effect.

13. The Management Agreement, at Section 13.1, provides *inter alia* that City Park shall indemnify, defend and hold **both** CCSF and Uptown harmless from any loss or action arising from City Park's operation of the Garage:

…Manager [*i.e.* City Park] shall Indemnify the **City**, the **Corporation**, and their respective officers, agents and employees (individually or collectively, an "Indemnitee") against any and all Losses (other than those arising out of the gross negligence or willful misconduct of the City or the Corporation or their respective Agents) arising out of: (a) **any injury to or death of any person or damage to or destruction of any property occurring in, on or about the Garage premises, or any part thereof, from any cause whatsoever**, or (b) **any default by Manager in the observance or performance of any of the terms, covenants or conditions of this Management Agreement**, or (c) **the use or occupancy of the Garage by Manager or its Agents or the performance by Manager of this Management Agreement.** In the event any action or proceeding is brought against an Indemnitee by reason of a claim arising out of any Loss suffered on or about the Garage for which Manager has indemnified the Indemnitee, and upon written notice from such Indemnitee, **Manager shall at its sole expense answer and otherwise defend such action or proceeding** using counsel approved in writing by the Indemnitee. The Indemnitee shall have the right, exercised in their sole discretion, but without being required to do so, to defend, adjust, settle or compromise any claim, obligation, debt, demand, suit or judgment against the Indemnitee in connection with the Garage. The provisions of this paragraph shall survive the termination of this Management Agreement with respect to any Loss occurring prior to or upon termination. **Manager specifically acknowledges and agrees that it has an immediate and independent obligation to defend the Indemnitee from any claim which actually or potentially falls within this indemnity provision even is such allegation is groundless, fraudulent or false, and at all times before the determination of the validity of any such claim**. The foregoing indemnity is not limited by the amount of insurance required to be maintained by the Manager. (Emphasis added).

14. The Management Agreement, at Section 6.1, subdivision o, provides *inter alia* that City Park is obligated to comply with all laws and regulations in operating and managing the Garage:

…**Manager shall comply and conform with all laws and all governmental regulations, rules and orders that may from time to time be put into effect relating to, controlling or limiting the use and operation of the Garage**. Manager shall not use or occupy the Garage in an unlawful, noisy, improper or offensive manner and shall use its best efforts to prevent any occupancy of the Garage or use made thereof which is unlawful, noisy, improper or offensive or contrary to any law or ordinance applicable to the Garage. Manager shall not cause any rubbish, dirt or refuse to be placed in the streets, sidewalks or alleys adjoining the Garage or to accumulate in the Garage. (Emphasis added).

15. The Management Agreement, at Section 21.3, provides *inter alia* that City Park, as a public accommodation, is obligated to comply the American's with Disabilities Act:

> …Manager acknowledges that the Americans with Disabilities Act ("ADA") requires that programs, services and other activities provided by a public entity to the public, whether directly or through a contractor, must be accessible to the disabled public. **Manager further acknowledges its obligation to comply with the ADA and any other federal, state or local disability rights legislation**. Manager warrants that it will fulfill that obligation, and that it will not discriminate against disabled persons in the provision of services, benefits or activities pursuant to this Management Agreement. (Emphasis added).

16. Pursuant to Section 9.1 of the Management Agreement, City Park was and is obligated to repair and maintain the Garage, as more specifically set forth therein.

17. The Management Agreement, at Section 16.3, provides, *inter alia*, that the prevailing party in any dispute arising thereunder is entitled to its attorneys' fees and litigation costs.

18. The Management Agreement was made for the benefit of both Uptown and CCSF, the intended beneficiaries of the Management Agreement.

**The Yates Action**

19. On August 9, 2007, Yates filed his Complaint for Injunctive & Declaratory Relief and Damages: Denial of Civil Rights of a Disabled Person in Violation of the Americans with Disabilities Act of 1990, Section 504 of the Rehabilitation Act of 1973, and California's Disabled Rights Statutes (the "**Yates Complaint**") (the "**Yates Action**").

20. In the Yates Complaint, Yates alleges he has been discriminated on the basis of his disability, and injured as a result thereof, by disabled access barriers and operational procedures at the Garage.

21. Following investigation, Third-Party Plaintiffs discovered that the Yates Action is based upon, among other things, City Park's alleged improper operation of the Garage in violation of state and federal disabled access laws and regulations. These alleged violations include, but are not limited to, City Park allegedly failing to maintain clear access aisles in the Garage, City Park allegedly failing to adequately maintain the Garage to ensure access to disabled patrons, and SF Valet allegedly parking vehicles in disabled access aisles in the Garage, all in violation of state and federal disabled access laws and regulations.

///

**The Breach Of The Management Agreement**

22. Promptly after receiving notice of the Yates Action, Third-Party Plaintiffs tendered, in writing, the defense and indemnity of the Yates Action to City Park.

23. Notwithstanding its indemnity obligations under the Management Agreement, City Park expressly refused to defend and/or indemnify Third-Party Plaintiffs in the Yates Action in direct and unjustified violation of City Park's obligations under the Management Agreement.

24. As a direct, foreseeable, and proximate result of City Park's breach of its contractual obligations, Third-Party Plaintiffs have each been, and continue to be, injured, harmed, and damaged, through the incurrence of the attorneys' fees and related costs and expenses arising out of the defense of the Yates Action, the costs associated with any judgment obtained or settlement reached in the Yates Action, the attorneys' fees and costs of pursuing this Action, and other such damages, all in an amount to be determined according to proof at trial or at the time of entry of judgment.

**FIRST CLAIM FOR RELIEF AGAINST CITY PARK**

**(Breach of Written Contract)**

25. Third-Party Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 24 above.

26. Uptown has duly performed all conditions precedent on its part required to be performed under the terms of the Management Agreement, except as to those conditions for which performance was excused by City Park's material breaches.

27. City Park has breached its obligations under the Management Agreement by failing and refusing to provide for the defense and indemnity of Third-Party Plaintiffs in the Yates Action.

28. Pursuant to, and consistent with, Uptown's duties to CCSF, CCSF is a named and intended third-party beneficiary of the Management Agreement.

29. As a direct, foreseeable, and proximate result of City Park's breach of its contractual obligations, Third-Party Plaintiffs have each been, and continue to be, injured, harmed, and damaged, through the incurrence of the attorneys' fees and related costs and expenses arising out of the defense of the Yates Action, the costs associated with any judgment obtained or settlement

1  reached in the Yates Action, the attorneys' fees and costs of pursuing this Action, and other such
2  damages, all in an amount to be determined according to proof at trial or at the time of entry of
3  judgment.

### SECOND CAUSE FOR RELIEF AGAINST SF VALET
### (Implied Equitable Indemnity)

30. Third-Party Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 24 above.

31. SF Valet is responsible, in some manner, for the acts, omissions, and occurrences which form the basis for the Yates Action.

32. As a direct, foreseeable, and proximate result SF Valet's wrongful conduct, Third-Party Plaintiffs have each been, and continue to be, injured, harmed, and damaged.

33. Third-Party Plaintiffs are each entitled to implied equitable indemnity from SF Valet for their respective attorneys' fees and related costs and expenses arising out of the defense of the Yates Action, the costs associated with any judgment obtained or settlement reached in the Yates Action, the attorneys' fees and costs of pursuing this Action, and other such damages, all in an amount to be determined according to proof at trial or at the time of entry of judgment.

WHEREFORE, Third-Party Plaintiffs pray for judgment as set forth herein.

### PRAYER FOR RELIEF

WHEREFORE, Third-Party Plaintiffs pray for judgment against City Park as follows:

1. Damages in an amount to be determined according to proof at trial or at the time of entry of judgment;

2. For interest at the legal rate according to proof at trial or time of entry of judgment;

3. For costs of suit herein incurred;

4. For all attorneys' fees incurred by Uptown and CCSF in defending the Yates Action;

5. For all attorneys' fees incurred by Uptown and CCSF in prosecution of this Third-Party Complaint; and

6. For such other and further relief as the Court may deem proper.

///

1    WHEREFORE, Third-Party Plaintiffs pray for judgment against SF Valet as follows:

2    1.   Damages in an amount to be determined according to proof at trial or at the time of
3    entry of judgment;

4    2.   For interest at the legal rate according to proof at trial or time of entry of judgment;

5    3.   For costs of suit herein incurred;

6    4.   For all attorneys' fees incurred by Uptown and CCSF in defending the Yates Action;
7    and

8    5.   For such other and further relief as the Court may deem proper.

10   DATED:  May 6, 2008              JEFFER, MANGELS, BUTLER & MARMARO LLP
                                      MARTIN H. ORLICK
11                                    MATTHEW S. KENEFICK

13                                    By: /S/ Martin H. Orlick
                                              MARTIN H. ORLICK
14                                    Attorneys for Defendants and Third-Party Plaintiffs
                                      CITY AND COUNTY OF SAN FRANCISCO and
15                                    CITY OF SAN FRANCISCO UPTOWN PARKING
                                      CORPORATION