# Exhibit 1

[Execution Copy]

RECORDING REQUESTED BY, AND
WHEN RECORDED RETURN TO:

Orrick, Herrington & Sutcliffe LLP
400 Sansome Street
San Francisco, CA 94111
Attn: Adrienne D. Weil, Esq.

APR 3 0 1999

CONFORMED COPY of document recorded on _____

at_____ as No. ___C568243___

This document has not been compared with
the original

SAN FRANCISCO ASSESSOR RECORDER

UNION SQUARE PUBLIC PARKING GARAGE LEASE

BY AND BETWEEN

THE CITY AND COUNTY OF SAN FRANCISCO

AND

THE CITY OF SAN FRANCISCO UPTOWN
PARKING CORPORATION

Dated as of May 1, 1999

DOCSSF1:292260.8
42024-2 ADW

# UNION SQUARE PUBLIC PARKING GARAGE LEASE

This lease dated for convenience as of May 1, 1999, by and between the City and County of San Francisco, a California municipal corporation ("Landlord" or "City"), and the City of San Francisco Uptown Parking Corporation, a California non-profit public benefit corporation ("Tenant"), who agree as follows:

1. **PREMISES**

Landlord leases to Tenant and Tenant leases from Landlord the real property described in Exhibit A attached hereto (the "Site") and all buildings and improvements now or hereafter located thereon (the "Improvements" and together with the Site, the "Premises").

2. **TERM**

The term shall commence upon recordation hereof and shall expire on the earlier to occur of: (i) 50 years after the date of commencement, and (ii) the payment and retirement or earlier defeasance of the indebtedness provided for in Section 5.2 hereof.

3. **DEFINITIONS**

Unless otherwise defined herein, all capitalized terms shall have the following meanings:

3.1.  Annual Garage Operating Budget.  The term "Annual Garage Operating Budget" means the operating budget for the Premises submitted by the Tenant to the Parking and Traffic Commission and the Controller of the City for approval in accordance with Section 9 hereof.

3.2.  Bonds.  The term "Bonds" means the obligations issued by the Tenant, acting by and on behalf of the Landlord, the proceeds of which shall be used for the construction of improvements to the Premises and the Park.

1

DOCSSF1:292260.8
42024-2 ADW

3.3.   <u>Debt Service.</u>   The term "Debt Service" means the principal of the Bonds, together with interest thereon and premium, if any, in accordance with the terms thereof.

3.4.   <u>Garage Gross Revenues.</u>   The term "Garage Gross Revenues" means all gross revenues received by or for the Tenant or any other person, firm or corporation derived from operation of the Premises and use of the Premises, including but not limited to, parking fees and charges, vending machines and pay telephones situated on the Premises.

3.5.   <u>Garage Net Revenue.</u>   The term "Garage Net Revenue" means the Garage Gross Revenues less Debt Service, Garage Operating Expenses and Park Maintenance Expenses.

3.6.   <u>Garage Operating Expenses.</u>   The term "Garage Operating Expenses" means the costs of operation and maintenance of the Premises described in the Initial Garage Operating Budget (as defined in Section 9 hereof) or in an Annual Garage Operating Budget approved by the Parking and Traffic Commission and the Controller of the City.  Garage Operating Expenses may include, but are not limited to, all costs and expenses of operation and maintenance of the Premises, all taxes, including possessory interest taxes, and similar charges required to be paid by Tenant, all management fees to be paid to operator of the Premises, all costs of providing security services on the Premises, all additions, betterments, improvements, capital maintenance, renewals, uninsured costs of reconstruction, replacement or repair, if any, and all other costs and expenses of any kind or character incurred by or on behalf of the Tenant in connection with the use and operation of Premises and all other costs and expenses approved by the Controller of the City, including the fees of the trustee under the security instrument, administrative expenses, amounts paid as a fee or otherwise to any professional operator employed by the Tenant, legal expenses, all overhead expenses of the Tenant, bookkeeping and auditing costs, electric light and

power charges, telephone, water, garbage and other public utility services, costs of advertising, costs of all insurance, bonds, compensation insurance and payroll taxes, costs of complying with any order of any governmental body required in connection with the use and operation of the Premises, any liability arising out of Tenant's obligation arising under the charter of the City and all other expenses, whether similar or dissimilar, but excluding any charges or allowances for depreciation or amortization of the Tenant's interest in the Premises.

3.7.   <u>Park.</u>   The term "Park" means the area commonly known as "Union Square Park" bordered by Geary Street, Powell Street, Post Street and Stockton Street, and located in the City.

3.8.   <u>Park Maintenance Expenses.</u>   The term "Park Maintenance Expenses" shall have the meaning ascribed thereto in Exhibit B hereof.

3.9.   <u>Parking and Traffic Commission or Commission.</u>   The term "Parking and Traffic Commission" or "Commission" means the Parking and Traffic Commission of the City and any successor thereto.

3.10.   <u>Supplemental Maintenance Agreement.</u>   The term "Supplemental Maintenance Agreement" means that certain agreement, substantially in the form attached hereto as Exhibit B, as may be extended and/or amended from time to time.

3.11.   <u>Sutter-Stockton Agreement.</u>   The term "Sutter-Stockton Agreement" means that certain agreement between the City and Uptown Parking Corporation and City of San Francisco Downtown Parking Corporation providing for the transfer of certain surplus revenues from the Sutter-Stockton parking garage to the trustee for the Bonds, as may be amended from time to time.

3.12.  _Total Premises._  The term "Total Premises" means, so long as the Supplemental Maintenance Agreement is in effect between the Landlord and the Tenant, the Premises together with the Park.  Upon termination of the Supplemental Maintenance Agreement, Total Premises shall mean the Premises, solely.

4.    SUITABILITY; ACCEPTANCE

Tenant acknowledges that Landlord has made no representations concerning the Improvements and Tenant represents that Tenant currently possesses a leasehold interest in the Improvements, is in possession of the Improvements and has examined the Improvements to determine their condition and suitability for conduct of Tenant's business.  By continuing its possession of the Improvements, Tenant shall be deemed to have accepted the Improvements as being in good condition and suitable for conduct of Tenant's business.  Landlord shall have no obligation to alter, remodel, improve, repair, decorate or paint the Improvements or any part thereof, except as specifically provided in this lease.

5.    PAYMENTS BY TENANT

5.1.  _Rent_

(a)  At the commencement of this lease pursuant to Section 2, the Tenant shall pay One Dollar ($1.00) to the Landlord in lawful money of the United States of America, as base rent under this lease.

(b)  Tenant shall pay to Landlord in lawful money of the United States of America additional rent on May 1 of each year an amount equal to the Garage Net Revenue.

5.2.  _Indebtedness_

Landlord hereby consents to Tenant's issuance of its indebtedness in such amount as may be necessary to finance the construction of improvements to all or part of the Total

Premises. The Tenant hereby agrees to pay to the holder(s) of all such indebtedness all amounts payable by the Tenant upon such indebtedness, together with interest thereon, in accordance with the terms thereof. Notwithstanding anything to the contrary contained herein, to the extent the terms and conditions contained in an indenture, other written instrument or related document securing any indebtedness issued by the Tenant for the purposes set forth in this subparagraph 5.2 (the "security instrument") conflict with any of the terms or conditions contained in this lease, the terms and conditions of such security instrument shall control. Landlord shall have no liability or obligation with respect to the payment of any such indebtedness of the Tenant.

6.     TAXES AND ASSESSMENTS

Tenant agrees to pay prior to delinquency all taxes and assessments of any kind, which lawfully may be imposed on the Premises or on Tenant, including (but not limited to) possessory interest taxes and non-property taxes. Tenant is hereby granted Landlord's consent to contest the validity or the amount of any such tax or assessment, if Tenant chooses to do so. Notwithstanding the foregoing, Landlord agrees to pay any future tax and any increase in any existing tax imposed upon the Premises or Tenant by the City together with any similar tax imposed by Landlord at any future date, so long as this lease is in effect.

Tenant acknowledges and understands that a possessory interest subject to property taxation may be created by this lease and that Tenant may be subject to the payment of property taxes levied on such possessory interest. Tenant further acknowledges that Tenant is familiar with San Francisco Administrative Code Sections 23.6-1 and 23.6-2, which require that Landlord submit a report, which includes specified information relating to the creation, renewal, sublease, or assignment of any such possessory interest, to the County Assessor within 60 days after any such transaction. Tenant agrees to provide to Landlord the information required by Section 23.6-2 within 30 days after any such transaction, if requested to do so by Landlord.

7.   <u>USE</u>

    7.1.   <u>Use of Premises</u>

        The Premises shall be used for a public off-street parking facility. With the prior written consent of Landlord, Tenant may use other space in the Premises for retail or commercial purposes as from time to time is determined by Tenant to be unsuitable or unnecessary for parking purposes. The preceding sentence is subject to the limitation that any such retail or commercial use does not cause interest on the indebtedness to be included in gross income for federal income tax purposes. Landlord covenants and agrees to comply with any limitations or restrictions applicable to retail and commercial use of all or part of the Park, as may be necessary to assure that such use does not cause interest on the indebtedness to be included in gross income for federal income tax purposes. The public off-street parking facility shall be operated for the benefit and convenience of the public, which shall have the right to use said facility at all times at rates and charges that are established as hereinafter provided.

    7.2.   <u>Limitations on Use</u>

        Tenant's use of the Premises as provided in this lease shall be in accordance with the following:

        (a) Tenant shall not do, bring, or keep anything in or about the Premises that will cause a cancellation of any insurance covering the Premises.

        (b) Tenant shall comply with all laws concerning the Premises or Tenant's use of the Premises, including, without limitation, the obligation at Tenant's cost to alter, maintain, or restore the Premises in compliance and conformity with all laws relating to the condition, use, or occupancy of the Premises during the term.

        (c) Tenant shall not use the Premises in any manner that will constitute waste, nuisance or unreasonable annoyance to owners or occupants of adjacent properties.

(d) Tenant shall not do anything on the Premises that will cause damage to the Premises. The Premises shall not be overloaded beyond its weight-bearing capacity.

8.    MAINTENANCE

Except as provided in Sections 18 and 19, Tenant, at its cost, shall maintain the Premises in good condition. Landlord shall have no responsibility to maintain the Premises. Tenant waives the provisions of Civil Code Sections 1941 and 1942 with respect to Landlord's obligations for tenantability of the Premises and Tenant's right to make repairs and deduct the expenses of such repairs from rent.

Tenant shall perform its management and maintenance services in accordance with the Maintenance Standards established by the Parking and Traffic Commission, and as may be amended from time to time by the Parking and Traffic Commission.

Tenant shall maintain private security personnel to patrol the Premises.

9.    DISBURSEMENTS

9.1    General Requirements

At all times during the term of this Lease, the trustee under the security instrument shall make all disbursements to pay the Garage Operating Expenses upon the basis of certificates executed by the principal financial officer of the Tenant and delivered to the trustee under the security instrument, and bearing, by endorsement thereon, the approval of the Controller of the Landlord or his or her duly authorized representative and such additional approvals as may be required by Section 9.2.

The amounts to be disbursed and all disbursements actually made pursuant to the security instrument and this Lease (other than amounts required to be deposited pursuant to the security instrument) shall be subject to examination, audit and approval by the Controller of the Landlord, to whom any dispute with respect thereto shall be submitted, and whose determination

of such dispute shall be final. The provisions of this Section 9.1 shall not affect in any way the rights or duties of the trustee under the security instrument, which shall be governed-exclusively by the security instrument.

The trustee under the security instrument shall render an annual accounting to the Landlord, the Parking and Traffic Commission and the Tenant as soon as reasonably possible after April 30th of each year. The Tenant shall prepare and submit to the Commission and the Controller for approval, at least sixty (60) days prior to commencement of operation of the Premises, a proposed operating budget (the "Initial Operating Garage Budget") setting forth in reasonable detail the contemplated expenditures to be included in the operation of the Premises during the initial period from the date of this lease or to and including the following 30th day of April and shall annually thereafter prepare and submit on or before the first day of each February an Annual Garage Operating Budget for each succeeding fiscal year or portion thereof during the term of this Lease. The Initial Garage Operating Budget and each Annual Garage Operating Budget shall set forth the anticipated Garage Gross Revenues based on anticipated parking demand and historical demand and a detailed estimate of all projected expenses, and shall cover generally the Garage Operating Expenses and a budget for capital repairs and improvements to be made to the Premises to be paid from contributions made pursuant to the Sutter-Stockton Agreement. The Initial Garage Operating Budget and each Annual Garage Operating Budget (for so long as the Supplemental Maintenance Agreement is in effect) shall incorporate by reference the Park Budget as described in the Supplemental Maintenance Agreement. One (1) copy of the Initial Operating Garage Budget and thereafter, each Annual Operating Budget, shall be filed with the trustee and any other parties as required under the security instrument, one (1) copy shall be filed with the Controller of the Landlord and one (1) copy shall be filed with the

Commission. The Commission and the Controller shall review the budget and make such recommendations with respect thereto as it and he may deem advisable and deliver a copy thereof to the Tenant and the trustee under the security instrument. Each such budget shall be changed to conform to any recommendations of the Commission and the Controller, and the Tenant shall conform to each budget with such changes, if any, as shall have been recommended by the Commission and the Controller. Upon approval by the Commission and the Controller the Initial Garage Operating Budget, and thereafter, each Annual Garage Operating Budget, shall be the operating budget for the corresponding fiscal year. The Tenant shall not deviate more than five percent (5%) in any line item of the Initial Garage Operating Budget or any Annual Garage Operating Budget without the Commission's and the Controller's prior written consent. The Tenant shall, within ten (10) days after the end of each calendar month during the term of the lease, render to the trustee under the security instrument, the Controller and the Commission a correct, detailed and complete statement in writing on a form approved by the Controller showing all Garage Gross Revenues, Garage Operating Expenses and Garage Net Revenues during such month. Such statement shall be signed and verified under oath and forwarded to the Controller and the Commission. The Tenant agrees to keep full, true and accurate books, records and accounts at all times during the term of this lease of the Garage Gross Revenues, Garage Operating Expenses and Garage Net Revenues, maintenance, the details of operation and of such other matters and to render such reports thereon as may be required by the Controller or the Commission, and the Landlord and its representatives shall at all times have the right to inspect, examine and audit all such records and accounts.

9.2.  Additional Requirements

Tenant may select its own general counsel. The fees and expenses of Tenant's general counsel shall be subject to the approval of the Controller, based on consultation with the

City Attorney of the Landlord (the "City Attorney"), which approval will not be unreasonably withheld or delayed. As of the date of this lease, Tenant has engaged the firm of Keil & Connolly as its general counsel.

Tenant may, subject to the prior approval of the City Attorney, select Bond Counsel from the City's list of approved Bond Counsel for any refinancing of the Bonds or for any other purpose for which the participation of Bond Counsel is required, including opinions required pursuant to the security instrument. Tenant's engagement of any such Bond counsel shall be pursuant to a legal services contract in a form provided by the City Attorney. The fees and expenses of Bond Counsel shall be subject to the approval of the Controller and the City Attorney, which approval will not be unreasonably withheld or delayed.

Landlord hereby acknowledges that the Tenant has engaged the firm of Orrick, Herrington and Sutcliffe LLP ("Orrick") as Bond Counsel for the issuance of the Bonds, that Orrick has performed and continues to perform services for Tenant related to the issuance of the Bonds and, therefore, such engagement shall not be subject to the approval rights described above.

Tenant may, subject to the prior approval of the City's Director of Public Finance, engage the services of financial advisers ("Financial Advisers") or underwriters required for any refinancing of the Bonds. Tenant's engagement of any such Financial Advisers shall be pursuant to a personal services contract in a form provided by the City Attorney. The fees and expenses of Financial Advisers shall be subject to the approval of the Controller and the City's Director of Public Finance, which approval will not be unreasonably withheld or delayed.

Landlord hereby acknowledges that Tenant has engaged Michael Semler as Financial Adviser and Stone & Youngberg LLC as underwriter for the issuance of the Bonds, that Mr. Semler and Stone & Youngberg have performed and continue to perform services for the Tenant related to the issuance of the Bonds and, therefore, such engagements shall not be subject to the approval rights described above.

Costs and fees incurred by Orrick, Keil & Connolly and Mr. Semler, including Stone and Youngberg, as of the date of this lease, will be paid, to the extent such costs and fees are approved by the Controller.

10.    <u>ALTERATIONS</u>

All alterations and improvements that may be made by the Tenant shall comply with all building, electrical, plumbing, health and fire codes of the City and County of San Francisco. Tenant shall be allowed to make alterations and improvements to the Premises at its own expense, provided that plans and a budget for such work must be submitted to and approved in writing by Landlord's Executive Director of the Department of Parking and Traffic or Director of the San Francisco Parking Authority before commencing such work. Tenant shall be allowed to make alterations and improvements to the Park at its own expense, provided that plans and a budget for such work must be submitted to and approved in writing by Landlord's Recreation and Parks Commission before commencing such work. Unless otherwise provided by written agreement, all additions to and improvements and alterations of the Premises, except trade fixtures of any subtenants, shall become a part of the realty, and be the property of Landlord and remain upon and be surrendered with the Premises. Tenant agrees that if it or any subtenant shall make any alterations or improvements, they shall not be commenced until five days after Landlord has received written notice from Tenant stating the date installation of the alterations is

to commence, in order that the Landlord may post appropriate notices of non-responsibility. Tenant will at all times permit such notices to be posted and to remain posted for the time required by law.

11.   MECHANICS' LIENS

Tenant shall pay all costs for construction done by it or caused to be done by it on the Premises.  Tenant shall keep the Premises and all interests therein free and clear of all mechanics' liens and claims of mechanics' liens resulting from construction done by or for Tenant.

Tenant shall have the right to contest the correctness or the validity of any such lien if, immediately on demand by the Landlord, Tenant procures and records a lien release bond issued by a corporation authorized to issue surety bonds in California in an amount equal to one and one-half times the amount of the claim of lien.  The bond shall meet the requirements of Civil Code Section 3143 and shall provide for the payment of any sum that the claimant may recover on the claim (together with costs of suit, if claimant recovers in the action).

12.   UTILITIES AND SERVICES

Tenant shall make all arrangements for and pay for all utilities and services furnished to or used by it, including, but not limited to, gas, electricity, water, telephone service, janitorial service and trash collection, and for all connection charges, provided, however, that Landlord may elect to furnish some or all of the utility services required by Tenant and, in such event, Tenant shall pay to Landlord the prevailing rates for all such utility services furnished to or used by Tenant together with reasonable charges for the connection and maintenance of such utility services.

13.     OPERATION AND CONDITION OF PREMISES

Tenant agrees, at its own expense, to maintain and keep the Premises clean and in good condition and repair, to operate therein a first-class parking garage during the term of this lease, including without limitation, routine repairs, contracting for major repairs, janitorial services, and to implement safety and fire prevention procedures and energy conservation measures. Tenant agrees not to vacate or abandon the Premises during said term. Upon expiration or earlier termination of this lease, Tenant shall surrender the Premises, including the garage structure and any and all fixtures (except trade fixtures installed by subtenants), to Landlord free and clear of liens and encumbrances and in as good condition as when received except for ordinary wear and tear and damage by act of God, the elements, the public enemy or any casualty not included within the risks to be insured against under paragraph 16 hereof.

14.     PUBLIC USE OF PARKING FACILITY AND PARK

The public shall be entitled, as a matter of right, to use the Premises and the Park, except such part as is used for retail or other commercial purposes, as a public park and off-street parking facility subject to such rates, charges, hours of operation, regulations and restrictions as may be fixed and established from time to time by the Commission and the City's Board of Supervisors.

15.     RATES, CHARGES, RULES AND REGULATIONS

(a) Subject to the terms and conditions of any security instrument and in accordance with the San Francisco Administrative Code, the Commission and the City's Board of Supervisors may from time to time establish and thereafter modify all rates and charges for parking of vehicles by Tenant or any other person, firm or corporation, and reasonable rules and regulations for operation of the parking facility, including but not limited to, the hours and days of operation, restrictions on all-day and monthly parking, and the public uses and purposes

permissible on or in the Premises. Tenant will at all times comply with said rates, charges, rules and regulations. All of the terms and provisions of this lease with respect to such rates and charges, hours and days of operation, restrictions on all day and monthly parking and public uses and purposes are subject to modification by Landlord.

(b) Upon application of Tenant, the Commission and the City's Board of Supervisors shall set and establish rates and charges for the parking of vehicles on the Premises which shall be adequate to insure that the gross receipts collected by Tenant, together with any funds that may be provided by Landlord, in its sole discretion, or by the City of San Francisco Uptown Parking Corporation, will at least equal the amounts sufficient to make such payments as may be required by any security instrument and the Garage Operating Expenses plus any additional amount which may be required to be paid into a capital improvement reserve fund or to meet any debt service coverage test which may be established by any security instrument.

16.    INDEMNITY AND EXCULPATION

16.1.    Exculpation

Landlord shall not be liable to Tenant and Tenant waives all claims against Landlord for any damage to Tenant or Tenant's property from any cause, excepting only any damage resulting solely and exclusively from willful misconduct of Landlord or Landlord's authorized representatives.

16.2.    Indemnity

Tenant shall hold Landlord and Landlord's officers, agents and employees harmless from, and, if requested, shall defend them against, any and all claims, direct or vicarious liability, damage or loss arising out of: (a) any injury to or death of any person or damage to or destruction of any property occurring in, on or about the Premises, or any part thereof, from any cause whatsoever, or (b) any default by Tenant in the observance or

performance of any of the terms, covenants or conditions of this lease, (c) the use, occupancy or condition of the Premises or Tenant's activities therein, or (d) breach or default under the security instrument. The foregoing indemnity obligation of Tenant shall include, but not be limited to, claims, liability, damage or loss predicated, in whole or in part, upon active or passive negligence of Landlord or Landlord's officers, agents or employees, and shall exclude only claims, liability, damage or loss resulting solely and exclusively from the willful misconduct of Landlord or Landlord's authorized representatives. The foregoing indemnity obligation of Tenant shall include reasonable attorneys' fees, investigation costs and all other reasonable costs and expenses incurred by Landlord from the first notice that any claim or demand is or may be made and, to the extent such costs are not covered by insurance, they shall be deemed an operation and maintenance expense of Tenant. The provisions of this paragraph shall survive the termination of this lease with respect to any damage, destruction, injury or death occurring prior to such termination.

17.    <u>INSURANCE</u>

17.1.    <u>Required by Security Instrument</u>

Tenant, at its cost, shall maintain such insurance during the term of this lease as is required by any security instrument.

17.2.    <u>Additional Insured</u>

Any property insurance that is so maintained by Tenant shall, in addition to other named insured, name Landlord as an insured, as its interest may appear. Any liability insurance that is so maintained by Tenant shall, in addition to other insured parties, name Landlord and Landlord's officers, agents and employees as additional or named insured and the policy shall contain cross-liability coverage.

17.3.  Waiver of Subrogation

The parties release each other, and their respective authorized representatives, from any claims for damage to any person or to the premises or to the fixtures, personal property, Tenant's improvements or alterations of either Landlord or Tenant in or on the Premises that are caused by or result from risks insured against under any insurance policy carried by the parties and in force at the time of any such damage, to the extent such claims for damage are covered by such policy.

Each party shall cause each insurance policy obtained by it to provide that the insurance company waives all right of recovery by way of subrogation against either party in connection with any damage covered by any policy.  Neither party shall be liable to the other for any damage caused by fire or any of the risks insured against under any insurance policy required by this lease, to the extent such damage is covered by such policy.

17.4.  General Insurance Matters

(a) All the insurance required under this lease shall:

(1) Be issued by insurance companies authorized to do business in the State of California, with a financial rating of at least an A + 3A status as rated in the most recent edition of Best's Insurance Reports.

(2) Be issued as a primary policy.

(3) Contain an endorsement requiring 30 days written notice from the insurance company to both parties and the trustee before cancellation or change in the coverage, scope, or amount of any policy.

(b) Each policy, or a certificate of the policy, together with evidence of payment of premiums, shall be deposited with Landlord at the commencement of the term and, on renewal of the policy, not less than 20 days before expiration of the term of the policy.

18.    DESTRUCTION

    18.1.    Destruction Due to Risk Covered by Insurance

        If, during the term of this lease, the Premises and/or the Park are totally or partially destroyed from a risk required to be covered by the insurance described in Section 17, rendering the Premises totally or partially inaccessible or unusable, Tenant shall apply the proceeds of such insurance as provided in an a security instrument issued by Tenant as provided in subsection 5.2 hereof and, if no such security instrument shall then be in effect, shall apply the proceeds as instructed in writing by Landlord.

    18.2.    Destruction Due to Risk Not Covered by Insurance

        If, during the term of this lease, the Premises and/or the Park are totally or partially destroyed from a risk not required to be covered by the insurance described in Section 17, rendering the Premises totally or partially inaccessible or unusable, Tenant shall take such action as is required by a security instrument securing any indebtedness issued by Tenant as provided in subsection 5.2 hereof and, to the extent it is consistent with said security instrument, shall continue to operate the Premises in substantially the same manner as they were being operated immediately before destruction. Such destruction, in and of itself, shall not terminate this lease.

19.    EMINENT DOMAIN

        If, during the term of this lease, there is any taking of all or any part of the Premises or any interest in this lease by condemnation, the rights and obligations of the parties and the application of any moneys received in connection with such taking shall be determined as provided in any security instrument relating to any indebtedness issued by the Tenant as provided in subparagraph 5.2 hereof and, if none is then in effect, said rights, obligations and allocations shall be determined according to general California law.

20.   ASSIGNMENT AND SUBLETTING

       Landlord agrees that Tenant may at any time assign, mortgage or otherwise encumber Tenant's interest in this lease and leasehold estate as security for the payment of any indebtedness of the Tenant issued pursuant to subsection 5.2 hereof, subject to the condition that any such assignment, mortgage or other encumbrance shall provide that the assignee, mortgagee or person in whose favor such encumbrance shall be made (hereinafter called "Trustee") shall be obligated to perform the terms of this lease on Tenant's part to be performed while, but only while, such Trustee is in possession of the Premises.  If a Trustee acquires Tenant's leasehold estate by foreclosure, deed in lieu of foreclosure or other lawful procedure, such Trustee shall hold the leasehold estate subject to all provisions of this lease and shall be bound to perform all obligations of Tenant hereunder and in accordance with the terms of the security instrument.

       This lease may not be otherwise assigned, sublet, transferred or hypothecated by Tenant without the written consent of Landlord, which consent shall not be unreasonably withheld.  No assignment (except any assignment for security purposes hereinabove-provided for) shall be effective unless the assignee shall execute an assumption agreement in form, scope and substance satisfactory to Landlord, assuming all the obligations of Tenant hereunder.  No subletting shall be effective unless the subtenant shall execute an agreement which provides that the sublease is subject and subordinate to the terms of this lease.  No assignment or subletting pursuant to this section 20 shall occur if such assignment or subletting would cause interest on the indebtedness to be included in gross income for federal income tax purposes.

       Consent to any assignment, subletting, mortgage or other encumbrance, including the consent given herein, shall not be deemed to constitute consent to any other attempted assignment, subletting, mortgage or other encumbrance, except an assignment, mortgage or other

encumbrance given as security for any indebtedness of Tenant issued pursuant to subsection 5.2 hereof.

21.  TENANT'S PARK MAINTENANCE

Tenant shall have the rights and obligations with respect to the Park as set forth in Exhibit B hereto.

22.  DEFAULT

22.1.  Tenant's Default

The occurrence of any of the following shall constitute a default by Tenant:

(a) Abandonment and vacation of the Premises (failure to occupy and operate the Premises for five consecutive days shall be deemed an abandonment and vacation).

(b) Failure to perform any other provision of this lease (but not including provisions contained in Exhibit B, which shall be governed by its own termination provisions) if the failure to perform is not cured within 30 days after notice has been given to Tenant.  If the default cannot reasonably be cured within 30 days, Tenant shall not be in default of this lease if Tenant commences to cure the default within the 30 day period and diligently and in good faith continues to cure the default.

(c) Either: (1) the failure of Tenant to pay its debts as they become due, or the written admission of Tenant of its inability to pay its debts, or a general assignment by Tenant for the benefit of creditors; or (2) the filing by Tenant of a petition in voluntary bankruptcy seeking reorganization, arrangement, liquidation, or other relief under any state or federal law relating to bankruptcy, insolvency, or reorganization or seeking or consenting to the appointment of a trustee, receiver, or liquidator of Tenant or of any substantial part of Tenant's assets; or (3) entry by a court of competent jurisdiction of an order, judgment or decree declaring Tenant an

insolvent or adjudging Tenant a bankrupt, or appointing a trustee or receiver for Tenant or of the whole or any substantial part of the Premises, or approving a petition filed against Tenant seeking reorganization of Tenant under any applicable law or statute of the United States of America or any state thereof, if such order, judgment or decree shall not be vacated or set aside or stayed within 60 days from the date of the entry thereof; or (4) the attachment, execution or other judicial seizure of substantially all of Tenant's assets located at the Premises or of Tenant's interest in this lease, unless such seizure is discharged within ten days. Notices given under this paragraph shall specify the alleged default and the applicable lease provisions, and shall demand that Tenant perform the provisions of this lease or pay the rent that is in arrears, as the case may be, within the applicable period of time, or quit the Premises. No such notice shall be deemed a forfeiture or a termination of this lease unless Landlord so elects in the notice. The purpose of the notice requirements set forth in this subsection is to extend the notice requirements of the unlawful detainer statutes of California.

22.2.   Landlord's Remedies

If Tenant commits a default, Landlord shall have the following remedies, in addition to all other rights and remedies allowed by law, subject, however, to the rights of the holders of any indebtedness secured by a security instrument:

(a) The right to terminate this Lease, in which event Tenant shall immediately surrender possession of the Premises and pay to Landlord all rental and other amounts payable by Tenant hereunder to the date of such termination.

(b) The remedies described in California's Civil Code section 1951.2, including, but not limited to, the right to recover the worth at the time of award of the amount by which the unpaid rent for the balance of the term after the time of award exceeds the amount of rental loss that Tenant proves could be reasonably avoided.

(c)    The remedy described in California Civil Code section 1951.4 (lessor may continue the lease in effect after lessee's breach and abandonment and recover rent as it becomes due, if lessee has the right to sublet or assign, subject only to reasonable limitations.)

22.3.    <u>Trustee's Right to Cure Defaults</u>

In the event of a default under subsection 22.1, Landlord shall give written notice to any Trustee under the security instrument of the occurrence and nature of the default. Such Trustee shall have all of the rights to cure the default that are given to such Trustee under the security instrument. Such Trustee shall give written notice to Landlord of its address and the existence and general nature of its security interest. Notice of default mailed by first class mail to the Trustee at the address so given to Landlord shall be sufficient compliance with Landlord's obligation to notify such Trustee of defaults. Failure of such Trustee to give notice to Landlord of its address shall constitute a waiver of such Trustee's right to receive notices of default and to cure any default.

23.    <u>SIGNS</u>

Tenant shall not have the right to place, construct, or maintain any sign, advertisement, awning, banner, or other exterior decoration without Landlord's written consent, which with respect to the garage only, Landlord shall not unreasonably withhold.

Any sign that Tenant shall be permitted to place, construct and maintain shall comply with all laws, and Tenant shall obtain all permits and approvals required by such laws, including, if necessary, approval of the Art Commission of the City and the Recreation and Park Commission of the City. Landlord makes no representation with respect to Tenant's ability to obtain such approvals. If requested by Landlord, Tenant at its cost shall remove all signs placed by it on the Total Premises at the expiration or earlier termination of this lease.

Landlord shall have the right to use for its signs, or for signs placed thereon by others with Landlord's consent, the exterior walls of the Total Premises.

24.    LANDLORD'S ENTRY ON PREMISES

(a) Landlord and its authorized representatives shall have the right to enter the Premises at all reasonable times for any of the following purposes:

(1) To determine whether the Premises are in good condition and whether Tenant is complying with its obligations under this lease.

(2) To do any necessary maintenance and to make any restoration to the Premises that Landlord has the right or obligation to perform.

(3) To serve, post, or keep posted any notices required or allowed under the provisions of this lease.

(4) To shore the foundations, footings, and walls of the Premises and to erect scaffolding and protective barricades around and about the Premises, but not so as to prevent entry to the Premises, and to do any other act or thing necessary for the safety or preservation of the Premises if any excavation or other construction is undertaken or is about to be undertaken on any adjacent property or nearby street. Landlord's right under this provision extends to the owner of the adjacent property on which excavation or construction is to take place and the adjacent property owner's authorized representatives.

(b) Landlord may enter the Premises at any time, without notice, in the event of an emergency. Landlord shall have the right to use any and all means which Landlord may deem proper to open the doors in an emergency in order to obtain entry to the Premises. Any entry to the Premises by any of said means, or otherwise, shall not under any circumstances be construed or deemed to be a forcible or unlawful entry into, or a detainer of the Premises, or an eviction of Tenant from the Premises or any portion of them.

(c) Landlord shall not be liable in any manner for any inconvenience, disturbance, loss of business, nuisance, or other damage arising out of Landlord's entry on the Premises as provided in this Section 24, except damage resulting from the active negligence or willful misconduct of Landlord or its authorized representatives.

(d) Landlord shall conduct its activities on the Premises as allowed in this Section 24 in a manner that will cause the least possible inconvenience, annoyance, or disturbance to Tenant and any approved subtenants.

25. MANAGEMENT OF THE PREMISES

During the term of this lease Tenant shall employ, as a professional operator, a person, firm or corporation with a staff experienced in the management and operation of public parking facilities. Tenant's selection of such operator shall be subject to approval by the Commission of: (i) the identity of the operator; (ii) the manner in which such operator is selected, by bid or otherwise, and (iii) the terms of the contract engaging such operator, including, without limitation, the fee of the operator. The terms of the contract shall comply with the Internal Revenue Code of 1986, as amended, and the rules and regulations promulgated thereunder and under the Internal Revenue Code of 1954, as amended, relating to obligations the interest on which is excluded from gross income for federal tax purposes.

The operation of a public parking facility on the Premises is subject to the provisions of the San Francisco Charter Section 7.204, and the San Francisco Administrative Code, Chapter 6, Sections 6.33 through 6.45, inclusive, relating to working conditions and payment of prevailing wages, and said sections are incorporated herein by this reference and made a part hereof as though fully set forth herein. Any employee performing services in connection with the operation of the parking facility, whether as now existing or as heretofore or at any time hereafter enlarged and whether the employee be employed by Tenant or by the

professional operator mentioned above, shall be paid not less than the highest general prevailing rate of wages, shall be subject to the same hours and working conditions, and shall receive the same benefits as in each case are provided for similar work in private employment performed in San Francisco, California.

26.    COMPLIANCE WITH LAWS

    26.1.    Non-Discrimination in City Contracts and Benefits Ordinance

        (a) Covenant Not to Discriminate.  In the performance of this Lease, Tenant covenants and agrees not to discriminate on the basis of the fact or perception of a person's race, color, creed, religion, national origin, ancestry, age, sex, sexual orientation, gender identity, domestic partner status, marital status, disability or Acquired Immune Deficiency Syndrome or HIV status (AIDS/HIV status) against any employee of, any City employee working with, or applicant for employment with Tenant, in any of Tenant's operations within the United States, or against any person seeking accommodations, advantages, facilities, privileges, services, or membership in all business, social, or other establishments or organizations operated by Tenant.

        (b) Subleases and Other Subcontracts.  Tenant shall include in all Subleases and other subcontracts relating to the Premises a non-discrimination clause applicable to such Subtenant or other subcontractor in substantially the form of subsection (a) above.  In addition, Tenant shall incorporate by reference in all subleases and other subcontracts the provisions of Sections 12B.2(a), 12B.2(c)-(k), and 12C.3 of the San Francisco Administrative Code and shall require all subtenants and other subcontractors to comply with such provisions.  Tenant's failure to comply with the obligations in this subsection shall constitute a material breach of this lease.

        (c) Non-Discrimination in Benefits.  Tenant does not as of the date of this Lease and will not during the Term, in any of its operations or in San Francisco or elsewhere within the United States, discriminate in the provision of bereavement leave, family medical leave, health

benefits, membership or membership discounts, moving expenses, pension and retirement benefits or travel benefits, as well as any benefits other than the benefits specified above, between employees with domestic partners and employees with spouses, and/or between the domestic partners and spouses of such employees, where the domestic partnership has been registered with a governmental entity pursuant to state or local law authorizing such registration, subject to the conditions set forth in Section 12B.2(b) of the San Francisco Administrative Code.

(d) <u>Condition to Lease</u>. As a condition to this lease, Tenant shall execute the "Chapter 12B Declaration: Nondiscrimination in Contracts and Benefits" form (Form HRC-12B-101) with supporting documentation and secure the approval of the form by the San Francisco Human Rights Commission. Tenant hereby represents that prior to execution of this Lease, (i) Tenant executed and submitted to the HRC Form HRC-12B-101 with supporting documentation, and (ii) the HRC approved such form.

(e) <u>Incorporation of Administrative Code Provisions by Reference</u>. The provisions of chapters 12B and 12C of the San Francisco Administrative Code relating to non-discrimination by parties contracting for the lease of City property are incorporated in this Section by reference and made a part of this Agreement as though fully set forth herein. Tenant shall comply fully with and be bound by all of the provisions that apply to this lease under such Chapters of the Administrative Code, including but not limited to the remedies provided in such Chapters. Without limiting the foregoing, Tenant understands that pursuant to Section 12B.2(h) of the San Francisco Administrative Code, a penalty of $50 for each person for each calendar day during which such person was discriminated against in violation of the provisions of this lease may be assessed against Tenant and/or deducted from any payments due Tenant.

26.2.  Conflict of Interest

Tenant represents that it is familiar with the provisions of Section C8.105 of the San Francisco Charter and Sections 1090 through 1098 and 87100 through 87103.6 of the California Government Code, all of which relate to prohibited conflicts of interest in connection with government contracts. Tenant certifies that it knows of no facts that constitute a violation of said sections, or any of them, and agrees to immediately notify Landlord if Tenant shall at any time obtain knowledge of facts constituting such a violation.

26.3.  Hazardous Material

(a) As used in this Lease, "hazardous material" shall mean any substance, water or material which has been determined by any state, federal, or local government authority to be capable of posing a risk of injury to health, safety and property including, but not limited to, all of those materials, wastes and substances designated as hazardous or toxic by the United States Environmental Protection Agency, the City and County of San Francisco, the United States Department of Labor, the United States Department of Transportation, the California Department of Environmental Protection and any other governmental agency now or hereafter authorized to regulate materials and substances in the environment.

(b) Tenant shall not cause or permit any Hazardous Material to be brought upon, kept or used in or about the Premises by Tenant, its agents, employees, contractors or invitees, without the prior written consent of Landlord, which Landlord shall not unreasonably withhold as long as Tenant demonstrates to Landlord's reasonable satisfaction that such Hazardous Material is necessary or useful to Tenant's operation and will be used, kept and stored in a manner that complies with all laws regulating any such Hazardous Material. If Tenant breaches the obligations stated in the preceding sentence, or if the presence of Hazardous Material on the Premises caused or permitted by Tenant results in contamination of the Premises, or if

contamination of the Premises by Hazardous Material causes damage for which Tenant is legally liable to Landlord, then Tenant shall indemnify, defend and hold Landlord harmless from any and all claims, judgments, damages, penalties, fines, costs, liabilities or losses which arise during or after the lease term as a result of such contamination including, without limitation, diminution in value of the Premises, damages for the loss or restriction on use of rentable or usable space or of any amenity of the Premises, damages arising from any adverse impact on marketing of any such space, and sums paid in settlement of claims, attorneys' fees, consultant fees and expert fees. This indemnification of Landlord by Tenant includes, without limitation, costs incurred in connection with any investigation of site conditions or any clean-up, remedial, removal or restoration work required by any federal, state or local governmental agency or political subdivision because of Hazardous: Material present in the soil or ground water on or under the Premises. Without limiting the foregoing, if the presence of any Hazardous Material on the Premises caused or permitted by Tenant results in any contamination of the Premises, Tenant, at its sole expense, shall promptly take all action that is necessary to return the Premises to the condition existing prior to the introduction of such Hazardous Material onto the Premises; provided that Landlord's approval of such actions shall first be obtained, which approval shall not be unreasonably withheld as long as such actions would not potentially have any material adverse effect upon the Premises.

26.4.  Charter Provisions

The terms and provisions of this lease shall be governed by and be subject to the provisions of the charter of the City and County of San Francisco as now existing or hereafter amended.

26.5.   Laws and Regulations

Tenant, at Tenant's cost and expense, shall comply with all laws, judicial decisions, orders and regulations of federal, state, county and municipal governments and the departments, courts, commissions, boards and officers thereof pertaining to Tenant's use and occupation of the Premises in effect either at the time of execution of this lease or at any time during the term.

27.   NOTICE

Any notice, demand, request, consent, approval, or communication that either party desires or is required to give to the other party or any other person shall be in writing and either served personally or sent, prepaid, by either: (a) first-class mail; (b) certified mail with a return receipt requested; (c) overnight delivery service; or (d) facsimile or other electronic transmissions.  Any notice, demand, request, consent, approval, or communication that either party desires or is required to give to the other party shall be addressed to the other party as follows:

|  |  |
|---|---|
| To Landlord: | Director of Property<br>Department of Real Estate<br>City and County of San Francisco<br>25 Van Ness Avenue, Room 400<br>San Francisco, CA 94102 |
| With a Copy to: | Director of the Department of Parking and Traffic<br>City and County of San Francisco<br>25 Van Ness Avenue, Room 410<br>San Francisco, CA 94102 |
|  | Controller<br>City and County of San Francisco<br>1 Dr. Carlton B. Goodlett Place<br>San Francisco, CA  94102 |

To Tenant:         Uptown Parking Corporation
                   244 Kearny Street
                   San Francisco, CA 94108
                   Attention: Paul Newman, Esq.

Either party may change its address by notifying the other party of the change of address. Notice shall be deemed communicated within forty-eight (48) hours from the time of mailing if mailed as provided in this section or within twenty-four (24) hours from the time it is delivered to the delivery service if sent by overnight delivery service.

28.    WAIVER

No delay or omission in the exercise of any right or remedy of Landlord on any default by Tenant shall impair such a right or remedy or be construed as a waiver.

The receipt and acceptance by Landlord of delinquent rent shall not constitute a waiver of any other default; it shall constitute only a waiver of timely payment for the particular rent payment involved. No act or conduct of Landlord, including, without limitation, the acceptance of the keys to the Premises, shall constitute an acceptance of the surrender of the Premises by Tenant before the expiration of the term. Only a notice from Landlord to Tenant shall constitute acceptance of the surrender of the Premises and accomplish a termination of the lease. Landlord's consent to or approval of any act by Tenant requiring Landlord's consent or approval shall not be deemed to waive or render unnecessary Landlord's consent to or approval of any subsequent act by Tenant.

Any waiver by Landlord of any default must be in writing and shall not be a waiver of any other default concerning the same or any other provision of the lease.

29.    RECORDATION; QUITCLAIM DEED

This lease shall be recorded.

Tenant shall execute and deliver to Landlord on the expiration or termination of this lease a quitclaim deed to the Premises, in recordable form, designating Landlord as transferee.

30.   SURRENDER OF PREMISES

On expiration of the term or earlier termination of this lease, Tenant shall surrender to Landlord the Premises and all Tenant's improvements and alterations in good condition (except for ordinary wear and tear occurring after the last necessary maintenance made by Tenant and except for destruction of the Premises covered by Section 17.)  Tenant shall make an inventory of all its personal property and shall surrender to Landlord all such personal property within the time periods stated in this section.

31.   TIME OF ESSENCE

Time is of the essence of each provision of this lease.

32.   CONSENT OF PARTIES

Except as expressly provided otherwise, whenever consent or approval of either party is required, that party shall not unreasonably withhold such consent or approval.

33.   EXERCISE OF LANDLORD'S RIGHTS

All rights, powers and privileges of Landlord under this lease may be exercised, on behalf of Landlord, by Landlord's Director of the Department of Parking and Traffic without the approval or consent of the Board of Supervisors, or any other-board, commission or officer of the City and County of San Francisco, except when such approval or consent is expressly required by charter or ordinance of the City and County of San Francisco or by other applicable law.

34.    <u>SUCCESSORS</u>

This lease shall be binding on and inure to the benefit of the parties and their successors, except as provided in Section 20.

35.    <u>REAL ESTATE BROKERS; FINDERS</u>

Each party represents that it has not had dealings with any real estate broker, finder, or other person, with respect to this lease in any manner. Each party shall hold harmless the other party from all damages resulting from any claims that may be asserted against the other party by any broker, finder, or other person, with whom the indemnifying party has or purportedly has dealt.

36.    <u>STATUS OF PARTIES ON TERMINATION</u>

Except as provided in Sections 16 and 22, if a party elects to terminate this lease as allowed herein, the parties shall be released from further liabilities and obligations on the date the lease terminates.

37.    <u>LABOR AND MATERIALS</u>

All labor to be performed and materials to be furnished in the operations of the Tenant hereunder shall be at the cost and expense of Tenant, and Landlord shall not be chargeable with, or liable for, any part thereof; and Tenant shall protect and defend Landlord's property against liens of every character arising from Tenant's operations thereon as provided in Section 11 hereof.

38.    <u>EXHIBITS</u>

All exhibits referred to are attached to this lease and incorporated by reference.

39.    INTERPRETATION OF LEASE

39.1.    California Law

This lease shall be governed by and construed and interpreted in accordance with the laws of the State of California.

39.2.    Integrated Agreement; Modification

This lease contains all the agreements of the parties and cannot be amended or modified except by a written agreement.

39.3.    Provisions are Covenants and Conditions

All provisions, whether covenants or conditions, on the part of Tenant shall be deemed to be both covenants and conditions.

39.4.    Captions; Table of Contents

The captions and the table of contents of this lease shall have no effect on its interpretation.

39.5.    Singular and Plural

When required by the context of this lease, the singular shall include the plural.

39.6.    Joint and Several Obligations

"Party" shall mean Landlord or Tenant; and if more than one person or entity is Landlord or Tenant, the obligations imposed on that party shall be joint and several.

39.7.    Severability

The unenforceability, invalidity, or illegality of any provision shall not render the other provisions unenforceable, invalid, or illegal.  The enforceability, validity, legality and exercise of rights and obligations of Exhibit B hereto shall be severable from the terms of the remainder of this lease and any determination of unenforceability, invalidity or illegality thereof

or exercise of rights thereunder shall not affect the terms of the remainder of this lease, except as stated herein under the definition of Total Premises.

### 39.8.  Counterparts

This lease may be signed in counterparts.

## 40.  PARCEL MAP

Landlord hereby covenants to institute forthwith all necessary action with respect to the Site under Section 751.01 et seq. of the California Code of Civil Procedure and further covenants to prosecute such action diligently to completion.  Upon completion of said proceedings, Landlord covenants to file a parcel map with respect to the Site pursuant to and in accordance with Section 66410 et seq. of the California Government Code.

## 41.  NON-LIABILITY OF CITY OFFICIALS, EMPLOYEES AND AGENTS

No election or appointive board, commission, member, officer, employee or other agent of the City shall be personally liable to Tenant, its successors and assigns, in the event of any default or breach by City or for any amount which may become due to Tenant, its successors and assigns, or for any obligation of City under this Agreement.

## 42.  NO RELOCATION ASSISTANCE; WAIVER OF CLAIMS

Tenant acknowledges that it will not be a displaced person at the time this lease is terminated or expires by its own terms, and Tenant fully RELEASES, WAIVES AND DISCHARGES forever any and all liabilities, losses, costs, claims, judgments, settlements, damages, liens, fines, penalties and expenses, including, without limitation, direct and vicarious liability of every kind (collectively, the "Claims"), against, and covenants not to sue, City, its departments, commissions, officers, directors and employees, and all persons acting by, through or under each of them, under any laws, including without limitation, any and all claims for

DOCSSF1:292260.8
42024-2 ADW

33

relocation benefits or assistance from City under federal and state relocation assistance laws (including, but not limited to, California Government Code Section 7260 et seq.)

43.    MACBRIDE PRINCIPLES – NORTHERN IRELAND

The City and County of San Francisco urges companies doing business in Northern Ireland to move toward resolving employment inequities and encourages them to abide by the MacBride Principles as expressed in San Francisco Administrative Code Section 12F.1, et seq. The City and County of San Francisco also urges San Francisco companies to do business with corporations that abide by the MacBride Principles. Tenant acknowledges that it has read and understands the above statement of the City and County of San Francisco concerning doing business in Northern Ireland.

44.    TROPICAL HARDWOOD AND VIRGIN REDWOOD BAN

The City and County of San Francisco urges companies not to import, purchase, obtain or use for any purpose, any tropical hardwood, tropical hardwood wood product, virgin redwood or virgin redwood wood product. Except as expressly permitted by the application of Sections 12I.3.b and 12I.4.b of the San Francisco Administrative Code, Tenant shall not provide any items to the construction of tenant improvements or the alterations, or otherwise in the performance of this lease which are tropical hardwoods, tropical hardwood wood products, virgin redwoods, or virgin redwood wood products. In the event Tenant fails to comply in good faith with any of the provisions of Section 12I of the San Francisco Administrative Code, Tenant shall be liable for liquidated damages for each violation in any amount equal to Tenant's net profit on the contract, or five percent (5%) of the total amount of the contract dollars, whichever is greater.

45.    BURMA (MYANMAR) BUSINESS PROHIBITION

   Tenant is not the government of Burma (Myanmar), a person or business entity organized under the laws of Burma (Myanmar) or a "prohibited person or entity" as defined in Section 12J.2(G) of the San Francisco Administrative Code.  City reserves the right to terminate this lease due to a default if Tenant violates the terms of this Section 45.  Chapter 12J of the San Francisco Administrative Code is hereby incorporated by reference as though fully set forth herein.  The failure of Tenant to comply with any of its requirements shall be deemed a material breach of this lease.  In the event that Tenant fails to comply in good faith with any of the provisions of Chapter 12J of the San Francisco Administrative Code, Tenant shall be liable for liquidated damages for each violation in an amount equal to Tenant's net profit hereunder, or ten percent (10%) of the total amount of the lease, or $1,000, whichever is greatest.  Tenant acknowledges and agrees that the liquidated damages assessed shall be payable to City upon demand and may be set off against any moneys due to Tenant from any City contract.

46.    PESTICIDE PROHIBITION

   Tenant shall comply with the provisions of Section 39.9 of Chapter 39 of the San Francisco Administrative Code (the "Pesticide Ordinance") which (i) prohibit the use of certain pesticides on City property, (ii) require the posting of certain notices and the maintenance of certain records regarding pesticide usage and (iii) require Tenant to submit to Department of Parking and Traffic an integrated pest management ("IPM") plan that (a) lists, to the extent reasonably possible, the types and estimated quantities of pesticides that Tenant may need to apply to the Premises during the terms of this lease, (b) describes the steps Tenant will take to meet the City's IPM Policy described in Section 39.1 of the Pesticide Ordinance and (c) identifies, by name, title, address and telephone number, an individual to act as the Tenant's

primary IPM contact person with the City. In addition, Tenant shall comply with the requirements of Sections 39.4(a) and 39.4(b) of the Pesticide Ordinance as of January 1, 1999 and January 1, 2000, respectively.

Nothing herein shall prevent Tenant, through the Department of Parking and Traffic, from seeking a determination from the Commission on the Environment that it is exempt from complying with certain portions of the Pesticide Ordinance as provided in Section 39.8 thereof.

## 47.    PROHIBITION OF TOBACCO ADVERTISING

Tenant acknowledges and agrees that no advertising of cigarettes or tobacco products is allowed on any real property owned by or under the control of the City, including the Premises. This prohibition includes the placement of the name of a company producing selling or distributing cigarettes or tobacco products or the name of any cigarette or tobacco product in any promotion of any event or product. This prohibition does not apply to any advertisement sponsored by a state, local or nonprofit entity designed to communicate the health hazards of cigarettes and tobacco products or to encourage people not to smoke or to stop smoking.

## 48.    FIRST SOURCE HIRING

In the performance of its rights and responsibilities under the Lease, tenant shall comply with the provisions of Sections 83.1 to 83.18 of the San Francisco Municipal Code related to the requirements, procedures and monitoring for "first source" hiring of qualified economically disadvantaged individuals for temporary construction and permanent entry-level positions related to this Lease.

DOCSSF1:292260.8
42024-2 ADW

49.    <u>CITY RIGHTS UNDER IRS REV. PROC. 82-26</u>

City may, at any time, to the extent permitted by law, purchase from Tenant all of Tenant's interests in and possession of the Premises described in Section 1 of the Lease by paying off or retiring or making provision for the payment of, the then-outstanding balance on the Bonds (principal, less applicable outstanding sinking fund balances established for retirement of outstanding obligations, plus costs of financing, including accrued interest and any and all premiums and other costs of retirement or redemption of financing) incurred by Tenant including any such indebtedness held by or in the name of any lender or institution providing a credit enhancement device in respect of such indebtedness. Such purchase of Tenant's interest in and possession of the Premises is hereinafter referred to as City's "Buyback" right.

City shall exercise its Buyback right hereunder, if at all, by (i) giving written notice of such proposed action to Tenant, (ii) placing into escrow an amount sufficient to defease the Bonds or paying all principal of, premium, if any, and any interest on the Bonds, and (iii) paying reasonable costs incident to the defeasance or payment.  Upon exercise of the City's Buyback right, Tenant shall have ninety (90) days to vacate the Premises.

RECOMMENDED:

DEPARTMENT OF PARKING AND
TRAFFIC OF THE CITY AND COUNTY OF
SAN FRANCISCO

By
STUART SUNSHINE
Director

RECOMMENDED:

WILLIAM LEE
Chief Administrative Officer

RECOMMENDED:

REAL ESTATE DEPARTMENT

ANTHONY J. DeLUCCHI
Director of Property

APPROVED AS TO FORM:

LOUISE H. RENNE
City Attorney

By:
Deputy City Attorney

LANDLORD:

CITY AND COUNTY OF SAN FRANCISCO

By
WILLIE L. BROWN, JR.
Mayor

ATTEST:

GLORIA YOUNG
Clerk, Board of Supervisors

TENANT:

CITY OF SAN FRANCISCO UPTOWN
PARKING CORPORATION

SIDNEY GOODWILL
President

ATTEST:

PAUL NEWMAN
Assistant Secretary

STATE OF CALIFORNIA                )
                                   ) ss.
City and County of San Francisco )


      On this 23rd day of April, 1999, before me, JOAN IMBEAU, a Notary Public, State of California, duly commissioned and sworn, personally appeared SIDNEY GOODWILL, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to this instrument and acknowledge that he executed it.

      IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal in the City and County of San Francisco on the date set forth above in this certificate.



_____
Notary Public
State of California
City and County of San Francisco
My Commission expires:  2-13-03


STATE OF CALIFORNIA                )
                                   ) ss.
City and County of San Francisco )


      On this 23rd day of April, 1999, before me, JOAN IMBEAU, a Notary Public, State of California, duly commissioned and sworn, personally appeared PAUL NEWMAN, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to this instrument and acknowledge that he executed it.

      IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal in the City and County of San Francisco on the date set forth above in this certificate.

_____
Notary Public
State of California
City and County of San Francisco
My Commission expires:  2-13-03

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of  California

County of  San Francisco

On  April 30, 1999  before me,  Karen J. Hong
_____Date_____                    _____Name and Title of Officer (e.g., "Jane Doe, Notary Public")_____

personally appeared  Willie L. Brown, Jr. and Gloria Young
_____Name(s) of Signer(s)_____

☑ personally known to me – OR – ☐ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

```
        OFFICIAL SEAL
        KAREN J. HONG
  NOTARY PUBLIC - CALIFORNIA
     COMMISSION # 1071505
     SAN FRANCISCO COUNTY
   Commission Exp. Sept. 10, 1999
```

WITNESS my hand and official seal.

_____Karen J. Hong_____
Signature of Notary Public

----------------- **OPTIONAL** -----------------

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

### Description of Attached Document

Title or Type of Document:  Union Square Public Parking Garage Lease

Document Date:  May 1, 1999 _____ Number of Pages:  37

Signer(s) Other Than Named Above:  Stuart Sunshine, William Lee, Anthony DeLucchi, ~~Louise H. Renne, Sidney Goodwill and Paul Newman~~

### Capacity(ies) Claimed by Signer(s)

Signer's Name:  Willie L. Brown, Jr.

☐ Individual
☐ Corporate Officer
   Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney-in-Fact
☐ Trustee
☐ Guardian or Conservator
☒ Other:  Mayor of the

City and County of San Francisco

```
RIGHT THUMBPRINT
   OF SIGNER
Top of thumb here
```

Signer Is Representing:

City and County of San Francisco

Signer's Name:  Gloria Young

☐ Individual
☐ Corporate Officer
   Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney-in-Fact
☐ Trustee
☐ Guardian or Conservator
☒ Other:  Clerk of the Board

of Supervisors for the
~~City and County of~~
San Francisco

```
RIGHT THUMBPRINT
   OF SIGNER
Top of thumb here
```

Signer Is Representing:

City and County of San Francisco

© 1994 National Notary Association • 8236 Remmet Ave., P.O. Box 7184 • Canoga Park, CA 91309-7184          Prod. No. 5907          Reorder: Call Toll-Free 1-800-876-6827

## EXHIBIT A

That certain garage building located in the City and County of San Francisco, commonly known as the Union Square Garage, bordered by Geary Street, Powell Street, Post Street, and Stockton Street (the "Improvements"), together with all right, title and interest in and to the land lying under the Improvements (the "Footprint"), together with a non-exclusive easement for ingress and egress over all land now or hereafter owned by Landlord bordered by and fronting on Geary Street, Powell Street, Post Street, and Stockton Street, in the City and County of San Francisco (the "Easement"), together with all of Landlord's present or future right, title, and interest in and to the legal parcel of land in the City and County of San Francisco, bordered by and fronting on Geary Street, Powell Street, Post Street, and Stockton Street (the "Future Parcel").  The Improvements, the Footprint, the Easement, and the Future Parcel are collectively referred to herein as the "Premises").

The Premises includes, but is not limited to, that certain public parking garage located on real property located in the City and County of San Francisco, more particularly described as follows:

PARCEL No. 4. COMMENCING at a point formed by the intersection of the Southerly line of Post Street with the Easterly line of Powell Street, running thence Easterly and along said Southerly line of Post Street 412 feet 6 inches to the Westerly line of Stockton Street; thence at right angles Southerly and along said Westerly line of Stockton Street 275 feet to the Northerly line of Geary Street; thence at right angles Westerly and along said Northerly line of Geary Street 412 feet 6 inches to the Easterly line of Powell Street; thence at right angles Northerly and along said Easterly line of Powell Street 275 feet to the Southerly line of Post Street and the point of commencement.

BEING that block of land known as Union Square.

# EXHIBIT B

## Supplemental Park Maintenance Agreement

[See Tab 19]

DOCSSF1:292260.8
42024-2 ADW